IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SCEPTER, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:15-cv-00614 |
| v. ) | Senior Judge Haynes |
| ) | |
| METAL BULLETIN LTD., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

Plaintiff, Scepter, Inc., a Tennessee corporation ("Scepter"), filed this action against the Defendant, Metal Bulletin Ltd., an United Kingdom corporation ("Metal Bulletin"), seeking a declaratory judgment that Scepter has not infringed on any Metal Bulletin copyright. (Docket Entry No. 1, Complaint at ¶ 13).

Scepter's claim arises out of its subscription to Metal Bulletin's copyrighted content. In essence, Scepter alleges that Scepter paid for a one-year subscription to Metal Bulletin's content, Metal Bulletin later sent Scepter a notification of copyright infringement, and Scepter filed this action for a declaratory judgment of non-infringement after unsuccessful settlement negotiations.

Four days after Scepter filed this action, Metal Bulletin filed a copyright infringement action in the United States District Court for the Southern District of New York. Parties jointly moved to stay the entire New York action and all aspects of this action except with respect to Metal Bulletin's motion to dismiss to get a ruling as to which of the two co-pending lawsuits should proceed.

Before the Court is Metal Bulletin's motion to dismiss (Docket Entry No. 11), contenting, in essence, that this Court should not exercise its declaratory judgment jurisdiction because Scepter raced to file its declaratory judgment action in this District while settlement discussions were

proceeding in anticipation of Metal Bulletin filing its substantive action in New York.

In its response (Docket Entry No. 17), Scepter essentially argues that this Court should adhere to the first-to-file rule and not dismiss its claim because Scepter filed this action in a proper forum following six months of good faith negotiations after justifiably concluding that further settlement efforts would be fruitless.

## A. Background

Scepter is a corporation that engages in secondary aluminum recycling and trading. (Docket Entry No. 1 at ¶ 1). Metal Bulletin is a corporation that provides news, prices, and analysis concerning steel and metal markets, and sells subscriptions to online content including a daily compilation of metal market news and prices called the "*Metal Bulletin Daily*." Id. at ¶¶ 2, 4.

On December 14, 2013, Scepter purchased a one-year Metal Bulletin subscription for $2,995. Id. at ¶ 4. Scepter alleges that it did not have a signed subscription agreement with Metal Bulletin. Id. at ¶ 7. Scepter also alleges that it attempted to renew its subscription on December 1, 2014, but Metal Bulletin rejected that attempt and has refused to allow Scepter to re-subscribe during the pendency of this dispute. Id. at ¶ 9.

Scepter alleges that Metal Bulletin sent Scepter a copy of a thirteen page document called the "Euromoney Institutional Investor PLC and Institutional Investor Inc. Terms and Conditions" "the "Euromoney T&C") that Metal Bulletin asserts governed Scepter's subscription. Id. at ¶ 7. Scepter further alleges that the Euromoney T&C contains provisions that are not consistent with Metal Bulletin's assertions about the scope of Scepter's subscription and are ambiguous as to the scope of the subscription:

> The Euromoney T&C do not even name Metal Bulletin as a party (although they do

list www.metalbulletin.com in a "non-exhaustive" list of 100 websites to which the Euromoney T&C purport to apply). In any event, the Euromoney T&C state on their very first page that "You" (a term which, as defined by the Euromoney T&C, includes a "Subscriber") "may access a Site." The very next section of the Euromoney T&C also contemplates employees "of any legal entity which is a Subscriber" having access to the Subscriber's subscription account.

Id.

On December 3, 2014, Metal Bulletin's counsel sent a letter to Scepter's president, Garney Scott, III, stating that Scepter had engaged in extensive copyright infringement. Id. at ¶ 5. According to Metal Bulletin, Scott was the only user authorized to access online content using Scepter's subscription, but Metal Bulletin's systems showed that other users had accessed subscription content. Id. Metal Bulletin's counsel also stated that Metal Bulletin was "routinely registering its copyrights" for each issue of *Metal Bulletin Daily* and that each issue of *Metal Bulletin Daily* constituted a separate work for the purposes of copyright infringement. Id. In his declaration supporting Metal Bulletin's motion to dismiss, Metal Bulletin's counsel avers that he explained in this letter that Metal Bulletin was "committed to vigorously enforcing its rights ... But if Scepter would prefer to discuss resolving this matter amicably, Metal Bulletin Ltd. is willing to entertain such an effort before taking other action." (Docket Entry No. 13 at ¶ 3).

According to Metal Bulletin's counsel's declaration, on December 12, 2014, Scott called Metal Bulletin's counsel and left a voicemail stating that he would "like to talk." Id. at ¶ 4. Shortly thereafter, Scott spoke with Metal Bulletin's counsel and stated that he wanted to reach a settlement. Id.

On January 8, 2014, Metal Bulletin's counsel sent Scott a letter stating that Metal Bulletin began registering copyrights for each issue of the *Metal Bulletin Daily* beginning on March 3, 2014.

(Docket Entry No. 1 at ¶ 6). Metal Bulletin's counsel also stated that Metal Bulletin's systems reflected Scepter's access to subscription content via Metal Bulletin's website from either Tennessee or New York on 154 days between March 3, 2014, and December 15, 2014. Id. Metal Bulletin stated that Scepter was liable for as much as $23,100,000 in statutory damages under the Copyright Act, or $150,000 for each of the 154 days that Scepter improperly accessed Metal Bulletin's subscription content. Id. In his declaration supporting Scepter's response, Scott states that the offer "remain[ed] open for two weeks from the date of the letter." (Docket Entry No. 18 at ¶ 3; see also Docket Entry No. 13 at ¶ 6).

Scepter alleges that Metal Bulletin sent Scepter "access data" spreadsheets that Metal Bulletin asserts reflect all of Scepter's access to Metal Bulletin's website during Scepter's subscription. Id. at ¶ 8. According to Scepter:

> Upon information and belief, that data shows that Scepter accessed a *Metal Bulletin Daily Newsletter* just one time during the period March 3, 2014 through December 15, 2014 – that is, the period during which Metal Bulletin insists that Scepter is liable for statutory damages under the Copyright Act for infringing on registered copyrights in 154 different issues of the *Metal Bulletin Daily Newsletter*. Upon information and belief, Metal Bulletin's data show that this one instance of Scepter accessing an issue of the *Metal Bulletin Daily Newsletter* occurred on September 11, 2014 from Scepter's principal office in Humphreys County, Tennessee, where Mr. Scott is based.

Id. at ¶ 8.

On January 23, 2015, Scepter's counsel sent Metal Bulletin's counsel a letter disputing Metal Bulletin's assertion of copyright infringement. (Docket Entry No. 1 at ¶ 10). According to Scott's declaration, this letter contained "a settlement offer equal to 3% of Metal Bulletin's demand in order to avoid the cost of an on-going dispute." (Docket Entry No. 18 at ¶ 4; see also Docket Entry No. 13 at ¶ 7).

4

On March 17, 2015, Metal Bulletin's counsel sent a letter to Scepter's counsel rejecting Scepter's offer. (Docket Entry No. 13 at ¶ 8; Docket Entry No. 18 at ¶ 5). This letter contained a reduced settlement offer. (Docket Entry No. 13 at ¶ 8; Docket Entry No. 18 at ¶ 5). According to Metal Bulletin's counsel's declaration, Scepter's counsel responded by email that same day, requesting various information to evaluate Metal Bulletin's position and prepare a response. (Docket Entry No. 13 at ¶ 9). Scepter's counsel made another email request on April 2, 2015. Id.

On April 9, 2015, Scepter's counsel sent a letter to Metal Bulletin's counsel stating his belief that Metal Bulletin's March 17 offer "greatly overvalue[d]" Metal Bulletin's claim. (Docket Entry No. 1 at ¶¶ 10-11; Docket Entry No. 18, attachment thereto, Exhibit 1). Scepter's counsel explained Scepter's position that it had paid for and used its subscription in a manner consistent with the reasonable expectations of a subscriber and the apparent terms of the subscription license. (Docket Entry No. 18, attachment thereto, Exhibit 1 at 1-3). Scepter's counsel also stated that, at least until late 2014, Metal Bulletin's conduct had been consistent with the notion that Scepter was properly using its subscription. Id. at 4. Scepter's counsel stated that "Scepter will litigate with Metal Bulletin if necessary" and suggested a "face-to-face meeting of business executives with decision-making authority" at a location of Metal Bulletin's choosing to see if they could resolve the dispute. Id. at 4-5.

On May 18, 2015, Metal Bulletin's counsel sent a letter to Scepter's counsel stating that the requested meeting was "premature." (Docket Entry No. 1 at ¶ 11; Docket Entry No. 22, attachment thereto, Exhibit B). Metal Bulletin's counsel responded to arguments in the April 9 letter, provided additional information, and urged Scepter's counsel to "re-examine with Scepter management the nature of its settlement position and to increase its settlement offer . . . . Metal Bulletin Ltd. will take

5

no further action for 10 days to allow time for a considered response." (Docket Entry No. 22, attachment thereto, Exhibit B at 1-2).

On May 19, 2015, the Senior Conference Programme Manager for Metal Bulletin Events emailed Scott to ask him to speak at an upcoming Metal Bulletin conference in Madrid, Spain. (Docket Entry No. 1 at ¶ 11; Docket Entry No. 18, attachment thereto, Exhibit 2). Given this pending invitation, Scepter's president asked Scepter's counsel to contact Metal Bulletin's counsel to propose a thirty-day "stand down" to discuss a resolution. (Docket Entry No. 18 at ¶ 9).

On May 27, 2015, Scepter's counsel sent a letter to Metal Bulletin's counsel stating that Scott was very interested in the invitation to speak at the upcoming Metal Bulletin conference. (Docket Entry No. 22, attachment thereto, Exhibit A at 2). Scepter's counsel also stated that "Your May 18 letter gave me 10 days to respond, and I have been doing my best to meet that deadline." Id. Scepter's counsel proposed a thirty-day "stand down" to see if the parties' principals could resolve the dispute. (Docket Entry No. 1 at ¶ 11; Docket Entry No. 22, attachment thereto, Exhibit A at 2).

On May 29, 2015, Metal Bulletin's counsel sent an email to Scepter's counsel rejecting the proposed "stand down." (Docket Entry No. 13 at ¶ 13; Docket Entry No. 18 at ¶ 11). According to Metal Bulletin's counsel's declaration, he also explained that the invitation to speak at the Metal Bulletin conference came from a "sister entity" without any knowledge of the copyright dispute, and did not imply that business level talks were acceptable. (Docket Entry No. 13 at ¶ 13). Metal Bulletin's counsel's email concluded:

> Rather than standing down, you and I should move forward promptly to determine whether there is a basis for resolving the subject claims without litigation. I hope to hear from you on that subject shortly.
>
> If Scepter is not interested in such a resolution, please let me know and Metal

Bulletin Ltd. will proceed.

Id.

On June 1, 2015, Scepter filed this action. (Docket Entry No. 1). That same day, Scepter's counsel sent Metal Bulletin's counsel an email notifying Metal Bulletin of the filing and explaining from Scepter's perspective their unsuccessful efforts for settlement. (Docket Entry No. 18, attachment thereto, Exhibit 3).

### B. Conclusions of Law

### 1. First-to-File Rule

Scepter argues that the Court should adhere to the "first-to-file" rule and exercise jurisdiction in this action. (Docket Entry No. 17 at 5). The "first-to-file" rule provides that "when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (quoting Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc., 16 Fed.Appx. 433, 437 (6th Cir. 2001)). Yet, exceptions to the first-filed rule "are not rare, and are made when justice or expediency requires." Kmart Corp. v. Key Indus., Inc., 877 F.Supp. 1048, 1053 (E.D. Mich. 1994). "[T]he first-filed rule . . . much more often than not gives way in the context of a coercive action filed subsequent to a declaratory action." AmSouth Bank v. Dole, 386 F.3d 763, 791 n.8 (6th Cir. 2004) (citations omitted). "Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." Certified Restoration, 511 F.3d at 552 (quoting AmSouth, 386 F.3d at 791 n.8). Factors that weigh against

enforcement of the first-to-file rule in the Sixth Circuit also include "extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." Zide, 16 Fed. Appx. at 437.

Here, the Court exercises its discretion to discard the first-to-file rule because Scepter filed this declaratory action in anticipation of a coercive suit, even though there is no indication that Scepter acted in bad faith. See Zide, 16 Fed.Appx. at 437 ("District courts have the discretion to dispense with the first-to-file rule where equity so demands."). Metal Bulletin's last pre-lawsuit correspondence on May 29, 2015, rejected Scepter's latest proposal of a thirty-day "stand down," and stated that if Scepter was not interested in a resolution without litigation, "please let me know and metal Bulletin Ltd. will proceed." Id. at ¶ 13. Thus, when Scepter filed this declaratory action on June 1, 2015, Scepter was aware that Metal Bulletin was willing to litigate if the parties did not reach an agreement promptly. Although parties did not have a definite agreement to negotiate and Metal Bulletin's May 29 email did not provide a specific deadline after which it would file a coercive suit, Scepter's action is nonetheless anticipatory because it does not concern Scepter's ongoing business operations and Metal Bulletin subsequently filed a coercive suit. See DigiTrax Entm't, LLC v. Universal Music Corp., 21 F.Supp.3d 917, 925 (E.D. Tenn. 2014) ("[W]hen faced with a declaratory judgment action and a coercive suit concerning the underlying issues, the presumption is in favor of dismissing or staying the declaratory action."). Thus, the Court declines to apply the first-to-file rule in this action.

### 2. Declaratory Judgment Jurisdiction

Scepter seeks a declaratory judgment that Scepter has not infringed on any claimed Metal Bulletin copyright. The Declaratory Judgment Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has explained that the Act allows federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995).

To determine whether to exercise declaratory judgment jurisdiction, a district court should balance the following five factors:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

Savoie v. Martin, 673 F.3d 488, 496 (6th Cir. 2012) (quoting Grand Trunk W. R.R. Co. v. Consol. Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)). Parties agree that the fourth factor is inapplicable here because the co-pending actions are both in federal court, but contest the remaining factors.

### a. Settle the Controversy

The Court concludes that the first factor does not weigh in favor of or against exercising discretion, because both co-pending actions would settle the entire infringement controversy. As in AmSouth, parties dispute "whether or not the ability of the [defendant] to file counterclaims that will dispose of all issues in the declaratory-judgment action[] can be considered in determining whether the judgment[] would settle the controversy." See 386 F.3d at 786. Metal Bulletin contends this

action would not settle the controversy because "many federal courts recognize a declaratory judgment exception to [the doctrines of compulsory counterclaim and res judicata] that allow other issues to survive for separate litigation." (Docket Entry No. 12 at 7 (citing Harborside Refridgerated Servs., Inc. v. Vogel, 959 F.2d 368, 372-73 (2d Cir. 1992)).

In Harborside, the Second Circuit explained that "[u]nder this exception, the preclusive effect of the declaratory judgment is limited to the subject matter of the declaratory relief sought." 959 F.2d at 372 (citations omitted). Based on the Court's review of decisional law, the Sixth Circuit has not directly decided whether a declaratory judgment exception applies in this Circuit. See BGB Pet Supply, Inc. v. Nutro Prods., Inc., 124 F.3d 196 (6th Cir. 1997) (unpublished table decision) (endorsing a declaratory judgment exception by adopting the reasoning of the Restatement (Second) of Judgments § 33 in the context of Ohio law); but see Meathe v. Ret, 547 Fed.Appx. 683, 687 (6th Cir. 2013) (unpublished) (citing with approval a district court's conclusion that "a claim for infringement is a compulsory counterclaim in a suit for declaratory judgment of non-infringement . . . ."). Yet, even if there were a declaratory judgment exception in this Circuit, it would not allow Metal Bulletin's copyright infringement claim to survive for separate litigation because copyright infringement is the only subject matter in both actions. See Harborside, 959 F.2d at 372. Because the New York action would also settle the controversy, this factor is neutral.

### b. Useful Purpose

Next, the Court concludes that this declaratory action would not serve a useful purpose in clarifying the legal relations at issue because this dispute does not affect Scepter's ongoing business activities. "The 'useful purpose' served by [a] declaratory judgment action is the clarification of legal duties for the future, rather than the past harm . . . ." AmSouth, 386 F.3d at 786. Here, Scepter does

not have any ongoing obligation to Metal Bulletin, as Scepter no longer has a subscription that allows it access to Metal Bulletin's copyrighted material. Scepter's requested declaration of non-infringement pertains only to past activity. As in AmSouth, "the historical incidents giving rise to liability are finished." 386 F.3d at 788. Thus, there would be no useful purpose served by a declaratory judgment in this action and the Court concludes that the second factor weighs heavily against exercising jurisdiction. See id. at 786-88 (finding that this factor weighed heavily in favor of dismissal where parties engaged in settlement negotiations for two years during which the plaintiffs "incurred no further loss").

### c. Procedural Fencing

Third, the Court considers whether Scepter filed this declaratory action for the purpose of "procedural fencing" or "to provide an arena for res judicata." Metal Bulletin argues that procedural fencing is present because Scepter suddenly broke off settlement talks and filed a preemptive suit in its home court. (Docket Entry No. 12 at 9). In response, Scepter argues that these circumstances do not support a finding of procedural fencing because Scepter exercised its right to seek a judicial resolution from a proper forum "[s]ix months after receiving Metal Bulletin's first letter, two months after the last settlement offer by either party had expired by its terms, and with Metal Bulletin refusing to even meet to talk . . . ." (Docket Entry No. 17 at 11).

The Sixth Circuit has explained that this factor is "meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 558 (6th Cir. 2008) (internal quotation omitted) (citing AmSouth, 386 F.3d at 788). In making this determination, "[t]he question is not which party has

11

chosen the better forum, but whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." See AmSouth, 386 F.3d at 789.

The Court concludes that Scepter filed this action in an attempt to acquire its choice of forum by filing first and thus this factor weighs against exercising jurisdiction. Metal Bulletin indicated on multiple occasions its intent to file a substantive copyright infringement action against Scepter if the parties were unable to come to a settlement agreement. Parties exchanged emails and letters in the weeks prior to Scepter filing this action that Metal Bulletin reasonably took to mean settlement discussions were still ongoing. See Catholic Health Partners v. CareLogistics, LLC, 973 F.Supp.2d 787, 795 (N.D. Ohio 2013) ("A court should view the issue of whether a first-filing plaintiff lulled its opponent into staying its hand from the perspective of the opponent, not the first-filer.").

On May 18, 2015, Metal Bulletin urged Scepter to increase its last settlement offer and stated that it would not take any further action for ten days. On May 27, Scepter's last communication before filing this action was that it was trying to meet the ten day deadline and proposed a thirty-day "stand down." Although Metal Bulletin's May 18 assurance that it would not take any action for ten days expired by its terms on May 28, Metal Bulletin's May 29 email reflected that it was still awaiting a response. (See Docket Entry No. 13 at ¶ 13 (rejecting the 30-day "stand down" proposed by Scepter and stating that the parties should "move forward promptly to determine whether there is a basis for resolving the subject claims without litigation. I hope to hear from you on that subject shortly. If Scepter is not interest in such a resolution, please let me know and Metal Bulletin Ltd. will proceed.")).

While Scepter did not explicitly tell Metal Bulletin that it had exhausted settlement negotiations, it took advantage of the apparent uncertainty at this point of the correspondence to file

12

an anticipatory declaratory action in its home forum. Yet, the Court is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Scottsdale, 513 F.3d at 558. Because the record does not reflect bad faith by Scepter, the Court concludes that this factor weighs slightly, rather than heavily, against exercising jurisdiction. See DigiTrax, 21 F.Supp.3d at 924 (finding that the third factor weighed heavily against exercising jurisdiction where the declaratory defendant had reason to believe that it could continue settlement negotiations rather than "immediately file its copyright infringement complaint").

### d. Alternative Remedy

Finally, the Court concludes that the fifth factor does not weigh heavily in favor of or against exercising jurisdiction because there is no indication that the New York action would have any difference in effectiveness from the Tennessee action. As discussed above, the sole issue in both co-pending actions is whether Scepter infringed on Metal Bulletin's asserted copyrighted material, which will be determined by federal law. The Tennessee and New York actions have the same subject matter and parties. Neither Scepter nor Metal Bulletin has identified any non-party witnesses that would benefit from pursuing this action in one district or the other. Thus, the actions in Tennessee and New York are equally effective remedies and this factor is neutral. See AmSouth, 386 F.3d at 791 ("Beyond recognizing that an alternative remedy exists, we are unsure that this factor weighs heavily in favor of or against entertaining these declaratory actions.").

Ultimately, the "useful purpose" factor weighs heavily in favor of declining jurisdiction because Sixth Circuit precedent provides that it pertains to future duties, the "procedural fencing" factor weighs slightly in favor of declining jurisdiction because Metal Bulletin reasonably believed settlement discussions were ongoing, the "settle the controversy" and "alternative remedy" factors

13

are neutral because the Tennessee action and New York action would be of equal effectiveness, and the "friction" factor is inapplicable because both cases are in federal court. Thus, the Court employs its discretion to decline jurisdiction in this declaratory judgment action. See Wilton, 515 U.S. at 288 ("If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action.").

Accordingly, for these reasons, Metal Bulletin's motion to dismiss (Docket Entry No. 11) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 29th day of February, 2016.

WILLIAM J. HAYNES, JR.
Senior United States District Judge